# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 15-3810

STEVEN J. TRZASKA,

*Appellant*,

vs.

L'ORÉAL USA, INC. and L'ORÉAL, S.A.,

*Appellees*,

## REDACTED BRIEF OF APPELLEE L'ORÉAL USA, INC.

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
(973) 848-4000
Christopher R. Carton
christopher.carton@klgates.com
George P. Barbatsuly
george.barbatsuly@klgates.com
Laura Scully
laura.scully@klgates.com

*Attorneys for Appellee L'Oréal USA, Inc.*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. 15-3810

STEVEN J. TRZASKA,

*Appellant*,

vs.

L'ORÉAL USA, INC. and L'ORÉAL, S.A.,

*Appellees*,

**CORPORATE DISCLOSURE STATEMENT**

Appellee L'Oréal USA, Inc. is an indirect wholly owned subsidiary of L'Oréal, S.A., which is publicly traded on the Paris Stock Exchange.

Respectfully submitted,

s/ Christopher R. Carton
CHRISTOPHER R. CARTON

Dated: July 26, 2016

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF THE ISSUES...........................................................3

STATEMENT OF THE CASE...............................................................4

    A.  Appellant's Employment and Professional Obligations as a Patent Attorney ....................................................................................4

    B.  The Patent Process in Which Appellant Was Allegedly Involved..................5

    C.  Appellant's Alleged Complaints about the Quality of Invention Disclosures..................................................................................7

    D.  Procedural History ........................................................................10

SUMMARY OF ARGUMENT ...............................................................12

STANDARD OF REVIEW ....................................................................14

ARGUMENT .........................................................................................15

    POINT ONE: THE DISTRICT COURT CORRECTLY HELD THAT APPELLANT'S CEPA CLAIM FAILS AS A MATTER OF LAW……..………15

    A.  Appellant fails to demonstrate that he held an objectively reasonably belief that L'Oréal USA's conduct violated a law, regulation, or clear mandate of public policy ..............................................................17

    B.  Appellant cannot ground his CEPA lawsuit on general rules governing the conduct of attorneys...............................................................23

        i.      The RPCs cited by Appellant are not directed to L'Oréal USA's business................................................................................25

        ii.    The RPCs Cited by Appellant Do Not Amount to a Clear Mandate of Public Policy ..................................................................27

CONCLUSION.....................................................................................33

CERTIFICATE OF BAR MEMBERSHIP..............................................34

CERTIFICATE OF COMPLIANCE ........................................................................35

CERTIFICATE OF SERVICE ................................................................................36

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Barratt v. Cushman & Wakefield of NJ*,
   144 N.J. 120 (1996) ..................................................................................17

*Blackburn v. United Parcel Service, Inc.*,
   179 F.3d 81 (3d Cir. 1999) .....................................................................17, 18

*Blackburn v. United Parcel Service, Inc.*,
   3 F. Supp. 2d 504 (D.N.J. 1998), *aff'd*, 179 F.3d 81 ...................................18, 19

*Burkhart v. Semitool, Inc.*,
   5 P.3d 1031 (Mont. 2000) ..........................................................................32

*Capanna v. Tribeca Lending Corp.*,
   2009 WL 900156 (D.N.J. Mar. 31, 2009) ..................................................18, 19

*Chavarriaga v. New Jersey Dep't of Corr.*,
   806 F.3d 210 (3d Cir. 2015) .....................................................................14, 15

*Chelly v. Knoll Pharmaceuticals*,
   295 N.J. Super. 478 (App. Div. 1996)...........................................................22

*Colon v. Prudential Ins. Co. of America*,
   2006 WL 507732 (N.J. Super. Ct. App. Div. Mar. 3, 2006)............................28

*Dzwonar v. McDevitt*,
   177 N.J. 451 (2003) ...........................................................................*passim*

*Estate of Roach v. TRW, Inc.*,
   164 N.J. 598 (2000) .........................................................................30, 32, 33

*Gibson v. 11 History Lane Operating Co.*,
   2014 WL 700124 (N.J. Super. Ct. App. Div. Feb. 25, 2014)......................26, 27

*Gonzalez v. City of Camden*,
   2012 WL 6097076 (N.J. Super. Ct. App. Div. Dec. 10, 2012) ...................22, 23

*Hitesman v. Bridgeway, Inc.*,
   218 N.J. 8 (2014) ...............................................................................*passim*

*Johnson v. New Jersey Higher Educ. Student Assistance Auth.*,
    2015 WL 6739525 (N.J. Super. Ct. App. Div. Nov. 5, 2015) ............................ 19

*Lippman v. Ethicon, Inc.*,
    222 N.J. 362 (2015) ..................................................................................... 31, 32

*Mazza v. George Yelland, Inc.*,
    161 F. Supp. 2d 376 (D.N.J. 2001) .................................................................... 23

*Morris v. Greitzer & Locks of New Jersey, LLC*,
    2009 WL 2525452 (N.J. Super. Ct. App. Div. Aug. 20, 2009) ......................... 27

*Morrow v. Balaski*,
    719 F.3d 160 (3d Cir. 2013) .............................................................................. 15

*Parker v. M&T Chemicals, Inc.*,
    236 N.J. Super. 451 (App. Div. 1989) ......................................................... 31, 32

*Pierce v. Ortho Pharmaceuticals, Corp.*,
    84 N.J. 58 (1980) ....................................................................... 22, 28, 29, 32

*Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enforcement*,
    327 N.J. Super. 428 (App. Div. 2000) ............................................................... 21

*Sunkett v. Misci*,
    183 F. Supp. 2d 691 (D.N.J. 2002) .................................................................... 22

*Tartaglia v. UBS PaineWebber Inc.*,
    197 N.J. 81 (2008) ...................................................................... 22, 23, 28, 29

*Warthen v. Toms River Community Memorial Hospital*,
    199 N.J. Super. 18 (App. Div. 1985) ................................................................. 29

*Weiss v. Carpenter, Bennett & Morrisey*,
    143 N.J. 420 (1996) .......................................................................................... 32

*Young v. Schering Corp.*,
    275 N.J. Super. 221 (App. Div. 1994), *aff'd*, 141 N.J. 16 (1995) .......... 18, 21, 22

*Young v. Township of Irvington*,
   629 F. App'x 352, 356-57 (3d Cir. 2015), *cert. denied sub nom.*,
   2016 WL 1545354 (U.S. June 13, 2016) ...........................................................19

**Statutes**

N.J.S.A. § 2A:38A-1, et seq....................................................................................11

N.J.S.A. § 34:19-3a.................................................................................................27

N.J.S.A. § 34:19-3c.................................................................................................27

N.J.S.A. § 34:19-3..................................................................................................16

N.J.S.A. § 34:19-3(a)(1) ........................................................................................24

N.J.S.A. § 34:19-3(a)(2) ........................................................................................24

N.J.S.A. § 34:19-3(c)(1) ...................................................................................*passim*

N.J.S.A. § 34:19-3(c)(2) ...................................................................................24, 33

N.J.S.A. § 34:19-3(c)(3) ...................................................................................*passim*

**Regulations**

37 C.F.R. § 1.56(a).................................................................................................30

37 C.F.R. § 11.18(1) ..............................................................................................30

37 C.F.R. § 11.20 ...................................................................................................30

37 C.F.R. § 11.106 .................................................................................................11

37 C.F.R. § 11.113 .................................................................................................30

37 C.F.R. § 11.201 .................................................................................................30

37 C.F.R. § 11.301 ...............................................................................................4, 26

37 C.F.R. § 11.303 ...............................................................................................4, 26

37 C.F.R. § 11.804 .................................................................................................30

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................10, 11, 14

RPC 1.6 ..................................................................................................11

RPC 1.7(b) .............................................................................................28

RPC 1.8(g) .............................................................................................27

RPC 1.13 ................................................................................................30

RPC 3.1 ..................................................................................................30

RPC 3.3 ..................................................................................................30

RPC 4.1 ..................................................................................................26

RPC 8.4 ..................................................................................................30

Pa. R.D.E. 204........................................................................................30

## PRELIMINARY STATEMENT

As the District Court correctly held, Appellant Steven R. Trzaska, a patent attorney, has no viable claim under the Conscientious Employee Protection Act ("CEPA") based on over a dozen generic attorney-ethics rules and his disagreement with the hypothetical application of an alleged company policy on yearly patent-filing goals. Confronted with the initial motion to dismiss of his former employer, L'Oréal USA, Inc.'s ("L'Oréal USA"), Appellant amended his Complaint and attached to the revised version three new Exhibits—confidential and privileged communications to and/or from L'Oréal USA's in-house counsel (and Appellant's direct report), which Appellant improperly diverted from the company months before his discharge. Despite the shocking nature of this conduct, the addition of those three pilfered Exhibits (and excerpts therefrom)—the only substantive change to Appellant's Complaint—did not make his pleading any stronger. Indeed, it still fails to state a CEPA claim in several regards.

To plead a viable CEPA claim, Appellant must assert, among other things, that he held an objectively reasonable belief about an actual, ongoing, or imminent violation of law or clear mandate of public policy. However, Appellant does not assert any such violation. He alleges only that at some indeterminate point L'Oréal USA's policy *might* lead him or other lawyers on his team to file patent

applications he considers at odds with broad attorney-ethics provisions about not clogging the U.S. Patent and Trademark Office with frivolous submissions.

Moreover, Appellant does not allege that he or any other attorney in his patent group filed a single frivolous patent—let alone that any Appellee directed them to do so. Nor does he assert that he refused to file a single patent application on ethical grounds. Instead, he maintains that filing at some unspecified time, some unidentified patent applications "*would have* necessitated his violation of" general rules governing the patent bar. But "would have" and "could have" and "should have" do not state a legal claim. Moreover, CEPA plaintiffs who, like Appellant, are attorneys are necessarily held to a more demanding standard, one that requires them to prove their employer was actually violating the law. Appellant cannot ground a CEPA action on a merely theoretical violation.

Even if L'Oréal USA had directed Appellant to engage in conduct that contravened his professional obligations—which it did not—his CEPA claim still fails, because the attorney-ethics provisions he relies upon do not govern L'Oréal USA's conduct and are not substantive. It is clear under recent New Jersey Supreme Court precedent that the law, regulation, or clear mandate of public policy allegedly contravened *must* "identif[y] acceptable and unacceptable practices in the defendant employer's business." Put simply, L'Oréal, a beauty company, is not governed by any ethics rules governing the legal profession. As

Appellant conceded: "[i]t is the legal and professional responsibility of *the reviewing patent attorney or patent agent* to make a good faith determination whether the subject matter in an invention disclosure is potentially patentable." Deciding whether Appellant carried out that attorney obligation would transform this action into a series of mini-litigations on the "patentability" of each invention disclosure that may have come across Appellant's desk. CEPA is not and cannot be this broad. The limited question is whether Appellant reasonably believed that L'Oréal USA had engaged or was engaging in unlawful conduct. Because Appellant did not make such an allegation in either version of his Complaint, it is abundantly clear that he did not. For this reason and those set forth below, the District Court's Order and Opinion disposing of his Amended Complaint should be affirmed, and this appeal should be dismissed.

## STATEMENT OF THE ISSUES

1.  Whether the District Court properly held that Appellant failed to demonstrate that he held an objectively reasonably belief that L'Oréal USA's conduct violated a law, regulation, or clear mandate of public policy.

2.  Whether the District Court rightly found that Appellant could not ground his CEPA lawsuit on general rules governing the conduct of attorneys.

## STATEMENT OF THE CASE

**A.    Appellant's Employment and Professional Obligations as a Patent Attorney**

Appellant, a patent attorney, was employed by L'Oréal USA as "head of patents," and at all times relevant to this action, was a licensed member of the Pennsylvania Bar and admitted to practice before the U.S. Patent and Trademark Office ("USPTO"). (Joint Appendix ("JA") JA026-027, paras. 13-15). Appellant thus has been subject to the Rules of Professional Conduct of the Supreme Court of Pennsylvania's jurisdiction ("Pennsylvania Rules") (JA027, para. 17) as well as of the USPTO, codified in federal regulations (together with "Pennsylvania Rules," "RPCs"). (JA026, para. 16). Among other things, the USPTO rules, as cited in Appellant's Amended Complaint, state the following:

> A practitioner shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law or in fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law.
>
> A practitioner shall not knowingly: (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact made to the tribunal by the practitioner.

(JA027, para. 19) (citing 37 C.F.R. §§ 11.301, 11.303). Appellant maintains that the "Pennsylvania Rules governing conduct of attorneys provide likewise." (JA027, para. 20).

**B.    The Patent Process in Which Appellant Was Allegedly Involved**

Concerning the patent process at L'Oréal USA, which Appellant takes issue with in his Amended Complaint, it "begins when a document known as an 'invention disclosure' is submitted. The invention disclosure is then vetted by the patent team to determine whether the subject matter merits the filing of a patent application." (JA031, para. 38). "An invention disclosure is a document which describes the invention and shows what the potentially innovative/patentable subject matter of the invention is." (JA031, para. 39). According to Appellant, "[o]nce the invention disclosure is vetted, an interview is held with the submitting inventor in order to determine whether the subject matter of the invention is novel and unobvious in view of publicly available prior art relating to the invention." (JA032, para. 41). Additionally, an "internal database of cosmetic formulas is searched to ensure that the subject matter of the invention has not previously been created and/or commercially launched as a product." (JA032, para. 41). Appellant acknowledges that "[i]t is the legal and professional responsibility of the reviewing patent attorney or patent agent to make a good faith determination whether the subject matter in an invention disclosure is potentially patentable." (JA032, para. 43).

Appellant alleges that during his employment, and beginning as early as 2004, he was subject to a policy requiring a certain number of patent applications

to be filed globally on a yearly basis. (JA027, para. 21). "In 2014, Appellant's group was given a quota of 40 patent applications to file." (JA032, para. 45). That same year, "there was an internal initiative to improve the quality of patent applications being filed . . . ." (JA033, para. 48). Appellant claims that "[a]s a result of this new initiative, fewer invention disclosures were submitted" to his patent group. (JA033, para. 50). He further alleges that "[d]uring the third and fourth quarters of 2014 Appellant and his group began receiving urgent messages from top management . . . that the global patent quotas were in danger of not being met." (JA033, para. 51).

Regarding the fulfillment of the patent goal allegedly applicable to Appellant in particular, he asserts that "[a]s of September, 2014" emails were sent "to the heads of laboratories advising that scientists were required to start submitting invention disclosures on an urgent basis" so that both local as well as global patent goals could be met. (JA033-34, para. 54). Appellant alleges that by September 2014 "there had been less [sic] than 15 applications filed by the L'Oréal USA research organization, with some ten potential filings in preparation or under review for patentability." (JA033, para. 53). By October 3, 2014, however, according to Exhibit B to the Amended Complaint, ███████████████████ ████████████████████████████████████████ (JA029-30, para. 35). Thus, by

- 6 -

Appellant's own allegations, his team was only five patent filings away from fulfilling its goal and had three more months to do so.

Furthermore, one of the very people Appellant claims pushed the patent team to meet its patent goal, Mr. Stephan Habif, "L'Oréal head of research for the Americas" and a member of "top management," expressly acknowledged the need to fulfill legal requirements in reaching that target. (JA033-34, para. 54). In the privileged and confidential email from Mr. Habif, which Appellant publically disclosed, ███████████████████████████████████ (JA029-30, para. 35). Appellant's own Exhibit thereby demonstrates L'Oréal USA's commitment to submitting legally sound patent filings and undermines his theory of this case.

## C.    Appellant's Alleged Complaints about the Quality of Invention Disclosures

According to Appellant's Amended Complaint, one of his attorney colleagues did not complain *with* him; she complained *to* him. Appellant asserts that he "and his patent colleagues complained that the quality of invention disclosures was so poor that they did not wish to run afoul of ethical and legal mandates governing their practice as patent attorneys by filing patent applications on these proposed inventions." (JA034, para. 55). In an attempt to identify what exactly those supposed complaints were, Appellant attached an email from Patricia Rocha, "one of [L'Oréal USA's] in-house Patent Attorneys," to Appellant and two

others, copying "L'Oréal, S.A. CFO [Jean-François] Pahin." (JA034, 041-42, para.

56 & Ex. B). In that privileged and confidential message Appellant took from his

former employer, ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████ (JA041-42, Ex. B) (emphasis added). Like Appellant, she was not

complaining about having to file what she deemed inferior patent applications, but

the mere possibility of submitting such filings given the deficiencies she was

observing in the underlying paperwork.

Similarly, in yet a third confidential and privileged email Appellant publicly

disclosed, ████████████████████████████████████████████

██████████████ (JA031-32, para. 36), ███████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ (JA043-44, Ex. C). Appellant thus

attempts to bolster his claim by referencing complaints from another patent

attorney directed, among others, *to himself as "head of patents,"* as if he was in no

way responsible for the patent process that he now seeks to challenge.[1]

---

[1] In the height of irony, Appellant chose to selectively redact portions of the email
correspondence demonstrating the Company's serious response to Ms. Rocha's

Even with those pilfered Exhibits, Appellant still does not allege in his Amended Complaint that anyone actually took issue with any expressed potential concern from a patent attorney, or requested or demanded that he or his team file patent applications for inventions that were not patentable. (JA024-38). Nor does he allege that he or his patent team actually refused to file a single patent application that they considered unethical. (JA024-38).

As to his own alleged complaint, Appellant maintains that during a meeting in October 2014, he told Mr. Pahin "that neither he nor the patent attorneys who reported to him were willing to file patent applications that the attorneys believed were not patentable (the subjects of which were at times admitted to by the submitting inventors to be not patentable) solely for the purpose of meeting" his office's patent quota. (JA034, para. 57). Significantly, Appellant does not allege that Pahin, or any managerial personnel for that matter, instructed him to do what he was not "willing" to do. (JA024-38).

Indeed, Appellant's alleged issue with the quality of the invention disclosures is framed in the conditional: "Appellant's filing of patent applications for inventions which were not patentable, as urged by L'Oréal, *would have* necessitated his violation of" the above-quoted provisions of the RPCs. (JA036, para. 69) (emphasis added). Appellant does not—because he can not—allege how,

concerns—while publically disclosing the underlying complaint despite its clear and conspicuous markings as "Attorney Client Privileged."

when, or by whom he was supposedly so "urged." Essentially, he alleges nothing more in his Amended Complaint than a hypothetical quandary: if he were to submit what he considered a frivolous patent application, that would be unethical on his part as a lawyer.

Appellant's employment was terminated on December 8, 2014. (JA036, para. 70). While he maintains it was on account of his not being "willing" to file baseless patent applications in theory, if this appeal is granted, L'Oréal USA will vigorously contest that purported basis for his discharge.

### D.    Procedural History

On April 16, 2015, Appellant filed his Complaint in this action against L'Oréal USA and L'Oréal S.A. L'Oréal USA was served with the Complaint on May 1, 2015. On June 5, 2015, L'Oréal USA timely filed a Motion to Dismiss Appellant's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

On June 24, 2015, Appellant filed—unredacted and unsealed—a First Amended Complaint, with Exhibits A through D. (JA024-47). The only substantive modifications to Appellant's pleading for purposes of his CEPA claim were to attach three more Exhibits and essentially copy and paste their contents into the body text of his First Amended Complaint. (JA024-47). All three of those Exhibits are internal L'Oréal USA emails that Appellant took from the company.

(JA039-44, Exs. A-C). The communications are to and/or from its in-house attorneys, including Appellant, regarding L'Oréal USA's patent process and strategy, and as such, are confidential and privileged. (JA024-47, paras. 33, 36-37, Exs. A-C). In fact, Exhibit A is even marked "CONFIDENTIAL / LEGAL OPINION / ATTORNEY-CLIENT PRIVILEGED." (JA039-40, Ex. A).[2] On July 22, 2015, L'Oréal USA timely filed its Motion to Dismiss Appellant's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

In an Opinion and Order both dated October 30, 2015, the District Court granted L'Oréal USA's Motion to Dismiss. (JA004, 007-16). In rejecting Appellant's CEPA claim, the court concluded that the RPCs "do not identify acceptable or unacceptable business practices for [L'Oréal USA]. They do not forbid [the company] from adopting metrics or measurable goals for its cosmetic business or define how Defendant may go about securing or maintaining

---

[2] Flouting his professional obligations, Appellant failed to limit his disclosure of such communications to what was reasonably necessary, filing his First Amended Complaint wholly unredacted and unsealed and without any prior notice to his former client. Ironically, Appellant's theft and public disclosure of his client's privileged communications violated his most basic professional responsibility obligations. (*See* Pa. RPC 1.6; 37 C.F.R. § 11.106). This conduct also constituted a flagrant breach of Appellant's employment-related agreements and policies, several of which include strict confidentiality provisions. Lastly, Appellant's actions potentially violated the New Jersey Computer Related Offenses Act, N.J.S.A. § 2A:38A-1, et seq., which, *inter alia*, prohibits "[t]he purposeful or knowing, and unauthorized . . . taking . . . of any data . . . existing internally or externally to a computer, computer system or computer network."

intellectual property rights." (JA013). Regardless, the court found that Appellant "fails to demonstrate that he held a reasonably objective belief that [L'Oréal USA's] quota policy had, or would in the future, violate the RPCs or any other authority." (JA014). The court reasoned that "[a]lthough he worked for [L'Oréal USA] for a decade, Plaintiff does not allege that Defendant ever asked him to submit defective or deficient patent applications." (JA015). Moreover, according to the court, L'Oréal USA's "implement[ing] measurable yearly goals and encourag[ing] its employees, including attorneys, to meet those goals . . . alone does not constitute a CEPA violation. To find otherwise, would be inappropriate and prevent employers from adopting lawful business policies." (JA016).

On November 20, 2015, Appellant filed a Notice of Appeal challenging the dismissal of his case against L'Oréal USA, attaching only the October 30, 2015 dismissal Order as to L'Oréal USA (JA001-3).[3]

## SUMMARY OF ARGUMENT

The dismissal of Appellant's CEPA claim should be upheld where Appellant merely alleges in his Amended Complaint that he took issue with a lawful

---

[3] Appellant refused to file as a separate, sealed volume of the joint appendix for his appeal the privileged and confidential emails that he took from L'Oréal USA before his termination and attached to his Amended Complaint, despite the fact that, among other things, these documents were sealed on the District Court docket pursuant to a consent order signed and entered by the lower court and still in effect. L'Oréal USA was thus forced to file an Emergent Motion to Stay the Deadline to File the Appendix and to Seal Records on April 26, 2016. This motion was granted in an Order dated May 6, 2016.

company policy setting annual goals for the filing of patent applications. Appellant cannot establish the first required *prime facie* element to his CEPA claim, namely, that he held an objectively reasonably belief that his employer's conduct violated a law, regulation, or clear mandate of public policy.

To satisfy this element, Appellant asserts facts to support that the alleged violation actually occurred or was imminent, but he makes no such allegations in his pleadings. He only maintains that he had a problem with L'Oréal USA's patent policy because at some indeterminate time the policy *might* have led him to file applications for inventions he deemed unpatentable, in violation of general attorney-ethics rules. Appellant does not claim that he or any other attorney in his patent group filed a single frivolous patent. He does not claim that they were directed by any defendant to do so. And he does not claim that he refused to file even one patent application on ethical grounds. In the absence of such allegations there can be no objectively reasonable belief of a violation of a law or public policy. Courts have also repeatedly concluded that disagreement with lawful company policies may not ground a CEPA claim. Appellant's CEPA claim is further meritless given that plaintiff-attorneys who bring CEPA claims, like Appellant, must prove an actual violation of law or public policy, not simply an objectively reasonable belief that a violation took place.

Regardless, there are only two CEPA provisions under which Appellant could conceivably have a claim, and he can satisfy the requirements of neither: N.J.S.A. § 34:19-3(c)(1), based on a "violation of a law, or a rule or regulation promulgated pursuant to law," and N.J.S.A. § 34:19-3(c)(3), based on conduct "incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." Under recent New Jersey Supreme Court precedent, the law, regulation, or other authority undergirding a CEPA claim must identify "acceptable and unacceptable practices in the defendant employer's business." *Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 34 (2014). The RPC provisions Appellant recites, however, do no such thing. In addition to the fact that they do not apply to L'Oréal USA, the RPCs have no substantive content. They have no substantial nexus to Appellant's allegedly protected activity as they offer no guidance on how such a patent-filing policy should have been structured or how patent applications should or should not be drafted. Appellant's allegations are insufficient to make out a CEPA claim, and his appeal should be dismissed.

## STANDARD OF REVIEW

This Court has plenary review over the District Court's order dismissing Appellant's Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) (citations omitted). In assessing a 12(b)(6)

motion, "first, the court must take note of the elements a plaintiff must plead to state a claim . . . [and t]hen the court must determine if a claim has facial plausibility, a threshold that can be reached only when a plaintiff pleads factual content—as opposed to mere conclusions—allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and internal punctuation omitted). "Although we must accept the allegations in the complaint as true, we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (citation and internal quotation marks omitted).

## ARGUMENT

### POINT ONE

### THE DISTRICT COURT CORRECTLY HELD THAT APPELLANT'S CEPA CLAIM FAILS AS A MATTER OF LAW

Having allegedly expressed mere displeasure with a general company policy and company goals, which supposedly could have created tension at some point with broad attorney ethics provisions that do not even apply to L'Oréal USA, Appellant has no viable CEPA claim. CEPA prohibits employers from taking "any retaliatory action" against an employee who:

a.    Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another

employer, with whom there is a business relationship, that the employee reasonably believes:

(1)  is in violation of a law, or a rule or regulation promulgated pursuant to law . . . . ; or

(2)  is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

. . . .

b.  Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1)  is in violation of a law, or a rule or regulation promulgated pursuant to law . . . . ;

(2)  is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3)  is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. § 34:19-3. To establish a *prima facie* claim under CEPA, Appellant must prove that (1) he held an objectively reasonably belief that his employer's conduct violated a law, regulation, or clear mandate of public policy; (2) he disclosed or threatened to disclose the conduct, or objected to the conduct or refused to participate in it; (3) he suffered retaliatory action; and (4) a causal connection exists between the whistleblowing activity and the retaliatory action. *Dzwonar v.*

*McDevitt*, 177 N.J. 451, 462 (2003). Appellant's allegations are inadequate to establish the first required element; his Amended Complaint was appropriately dismissed.

**A.    Appellant fails to demonstrate that he held an objectively reasonably belief that L'Oréal USA's conduct violated a law, regulation, or clear mandate of public policy**

In his Amended Complaint, Appellant only alleges what he "and his patent colleagues . . . did not wish to" do in theory at some unidentifiable time (JA034, para. 55). As such, he cannot satisfy the first element of a *prima facie* CEPA case, requiring Appellant to "set forth facts that would support an objectively reasonable belief that a violation has occurred." *Id.* at 464. In determining whether a plaintiff possessed such an objectively reasonable belief, the "court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." *Id.*

While the New Jersey Supreme Court has declined to apply a temporal limitation as to CEPA claims, holding that disclosure of past violations of law as well as ongoing violations are protected under the statute, Appellant's Amended Complaint does not allege past or ongoing violations. *Barratt v. Cushman & Wakefield of NJ*, 144 N.J. 120, 131-32 (1996); *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 93 n. 4 (3d Cir. 1999). Appellant instead essentially alleges the potential for violations in the future. However, in *Blackburn v. United Parcel*

*Service, Inc.*, the District Court stated that "[i]n order for an employee's belief to be considered 'reasonable,' that belief must be such that a 'reasonable lay person would conclude that illegal activity was going on' or at the very least, is imminent." 3 F. Supp. 2d 504, 515 (D.N.J. 1998), *aff'd*, 179 F.3d 81. In rejecting the Appellant's CEPA claim in *Blackburn*, the Court noted that the Appellant had

> merely conveyed his concerns, through various memos and conversations, that a law might at some point in the future be violated if certain precautions were not taken or changes not made in the pricing system then being developed. He also questioned, disagreed with, and expressed his level of discomfort about his employer's practices.

*Blackburn*, 179 F.3d at 516. The Court found that the Appellant never conveyed a reasonable belief that the activities about which he complained "were unlawful such that 'a reasonable lay person' could 'conclude that illegal activity was going on.'" *Id.* at 516 (quoting *Young v. Schering Corp.*, 275 N.J. Super. 221, 233 (App. Div. 1994), *aff'd*, 141 N.J. 16 (1995)).

Following *Blackburn*, in *Capanna v. Tribeca Lending Corporation*, the court dismissed the plaintiff's CEPA claim on a motion for summary judgment. No. 06-5314, 2009 WL 900156 (D.N.J. Mar. 31, 2009). There, the plaintiff, a mortgage loan underwriter, alleged that she was fired for refusing to underwrite a loan that she believed to be fraudulent. The court rejected that claim, finding that she had not actually been asked to underwrite the loan. *Id.* at *8. The court concluded that

Appellant "failed to establish that she had a reasonable belief that [defendant] was engaging in, or about to engage in, fraud . . . . Appellant has alleged fraud against [defendant] but she has failed to buttress her claims with any evidence to suggest that illegal activity occurred or was imminent." *Id.* (citing *Blackburn*, 3 F. Supp. 2d at 515).

*Young v. Township of Irvington* confirms as well that Appellant's CEPA claim is unviable. 629 F. App'x 352, 356-57 (3d Cir. 2015), *cert. denied sub nom.*, 2016 WL 1545354 (U.S. June 13, 2016). In *Young*, the plaintiff claimed that he was retaliated against for refusing to conduct a drug test on a subordinate due to lack of the necessary reasonable suspicion. Affirming the lower court's decision granting the employer's motion to dismiss, this Court found:

> Young did not allege in his complaint that he was ever asked by his superiors to order a drug test . . . [and] he failed to allege that he was terminated because of the existence of a policy or practice that would have, for example, required him to order a police officer to undergo drug testing even in the absence of reasonable suspicion.

*Id.* at 356-57 (citations omitted). *See also, e.g.*, *Johnson v. New Jersey Higher Educ. Student Assistance Auth.*, 2015 WL 6739525, at *6 (N.J. Super. Ct. App. Div. Nov. 5, 2015) (affirming summary judgment for the employer, because although plaintiff based her CEPA claim on fraud, she did not maintain that her

employer "told her to fabricate facts, falsify documents, or falsely implicate others"). This case is no different, and the same result, dismissal, is warranted.

Appellant grounds his CEPA claim on the RPCs. He alleges that complying with L'Oréal's patent-filing goals might require him to file patents that lacked factual and legal support, in violation of the RPCs. (JA034-36, paras. 55, 57, 65, 69). However, he does not identify a single patent that was filed or that he was asked to file that would actually violate the RPCs. (JA034-36, paras. 55, 57, 65, 69). Given Appellant's failure to do so, his alleged objections amount to nothing more than a dispute over the reasonableness of L'Oréal's patent-quota policies. Appellant's own Exhibit B even confirms that any violation of the RPCs was not imminent. ██████████████████████████████████████████ (JA032, para. 45), ██████████████████████████████████ ██████████████████████████ (JA029-30, para. 35). Appellant's team was only five patent filings away from meeting its goal three months later.

Courts have routinely held that disputes over the merits of an employer's internal policies are not actionable under CEPA. *See Hitesman*, 218 N.J. at 31-32 ("The statutory elements and the analytical framework set forth in *Dzwonar* distinguish an employee's objection to, or reporting of, an employer's illegal or unethical conduct from a routine dispute in the workplace regarding the relative merits of internal policies and procedures."); *Dzwonar*, 77 N.J. at 467-69

(affirming dismissal of plaintiff's CEPA claim based upon the general administration of union meetings and the union's allegedly inadequate explanation of its actions to its membership); *Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enforcement*, 327 N.J. Super. 428, 432 (App. Div. 2000) (rejecting a CEPA claim premised upon "nothing more than a policy dispute between the Division's middle and upper level management concerning the priority to be assigned to exclusion cases"); *Young*, 275 N.J. Super. (where plaintiff objected to his employer's researching of a drug because it was allegedly controversial and unrealistic, concluding that CEPA "was not intended to provide a remedy for wrongful discharge for employees who simply disagree with an employer's decision, where that decision is entirely lawful. Thus, [defendant's] termination of Appellant's employment, even if it were because of his complaints and disagreements with [its] research decision, does not violate a law, regulation, or a 'clear mandate of public policy'. . . .").

Further undermining Appellant's CEPA claim is the fact that he is an attorney. Ordinarily, to establish the first element of a *prima facie* case under CEPA, a plaintiff need not demonstrate an *actual* violation of a law, regulation, or clear mandate of public policy, only an "objectively reasonable belief that a violation has occurred." *Dzwonar*, 177 N.J. at 464. However, in *Tartaglia v. UBS PaineWebber Inc.*, the New Jersey Supreme Court held, in the analogous context of

a common law claim for wrongful discharge in violation of public policy under

*Pierce v. Ortho Pharmaceuticals, Corporation*, 84 N.J. 58 (1980),[4] that where a

plaintiff-attorney premises a *Pierce* claim on a violation of an RPC, the Appellant

must demonstrate that the conduct "actually violated" the RPC. 197 N.J. 81

(2008).[5] The Court reasoned that a higher standard should apply to attorneys

"because attorneys should be knowledgeable about the RPCs, and because they

have an independent obligation to report violations to the appropriate authorities."

*Id.* at 112. *See also Gonzalez v. City of Camden*, 2012 WL 6097076 (N.J. Super. Ct.

App. Div. Dec. 10, 2012) (affirming the summary-judgment dismissal of plaintiff-

attorney's CEPA claim where he complained that the City of Camden's tort

department "had taken the unethical view that the City was not obligated to hire

outside counsel for employees in tort and civil rights cases where the City was also

---

[4] "CEPA is recognized as a codification of principles articulated in *Pierce*." *Gibson v. 11 History Lane Operating Co.*, 2014 WL 700124, at *6 n.3 (App. Div. Feb. 25, 2014) (citing *Hitesman*, 430 N.J. Super. at 209 n.5). While there are certain differences between CEPA and *Pierce* claims, none are implicated here, *see Chelly v. Knoll Pharmaceuticals*, 295 N.J. Super. 478, 480 n.1 (App. Div. 1996), and courts evaluating CEPA claims have looked to *Pierce* and its progeny for guidance. *E.g.*, *Young*, 275 N.J. Super. at 236-37 (relying on *Pierce*, which the Appellate Division found "instructive," to affirm the dismissal of Appellant's CEPA claim under N.J.S.A. §§ 34:19-3(c)(1) and (3)).

[5] This standard is also consistent with a case Appellant refers to, *Sunkett v. Misci*, in which the plaintiff-attorney alleged that another attorney was assigned "as second chair [in] an effort to mislead a state court about [that attorney's] availability for trial." 183 F. Supp. 2d 691, 716 (D.N.J. 2002). Here, however, Appellant has not alleged any actual conduct that violated the RPCs.

a defendant [and] had not agreed to indemnify the employee," but a prior Supreme Court opinion held that this was not ethically mandated).

Appellant's position that, for purposes of CEPA, he is not held to a higher standard as an attorney is irreconcilable with *Tartaglia* and *Gonzalez*, which he fails to account for in his brief. As his own allegations reflect, Appellant cannot prove an actual violation of the RPCs. He merely asserts in his Amended Complaint that the "filing of patent applications" for non-patentable inventions "*would have necessitated* his violation of" the RPCs. (JA036, para. 69) (emphasis added).

While Appellant cites to *Mazza v. George Yelland, Inc.* for the proposition that he does not need to allege an actual violation of law or public policy, that case involved a corporate bookkeeper—not a lawyer. 161 F. Supp. 2d 376, 378 (D.N.J. 2001). Regardless, *Mazza* is distinguishable. Mazza alleged she was told to book certain expenses that she believed were improper and was told she would be fired if she refused to do so, *id.* at 377, whereas Appellant has not alleged that he was told to file or that he refused to file a single patent he considered unpatentable in his professional estimation. As such, especially given that he is an attorney, Appellant fails to satisfy the first required element of his CEPA claim.

## B.  Appellant cannot ground his CEPA lawsuit on general rules governing the conduct of attorneys

In addition to failing to establish that the alleged conduct actually occurred or was imminent, Appellant cannot demonstrate that the conduct complained of

falls within one of the enumerated categories under CEPA. Appellant alleged that he was proceeding under the following sections (JA037, para. 71): N.J.S.A. §§ 34:19-3(a)(1) and (a)(2), and N.J.S.A. §§ 34:19-3(c)(1), (c)(2), and (c)(3). His alleged actions, however, come within none of those subsections.

Appellant does not have a claim based on Section 3(a). He did not allegedly disclose any activity, policy, or practice of L'Oréal USA. Rather, he complained about the patent process that L'Oréal USA patent management already knew about. He also cannot proceed based on allegedly objecting to what he reasonably believed was a "fraudulent or criminal" activity, policy, or practice. Appellant's Amended Complaint is bereft of any allegation that could support deception or a misrepresentation, and potentially filing patent applications that Appellant deemed weak in his professional opinion was in no way criminal. Thus, there are only two provisions warranting further analysis: that the alleged conduct was (i) "in violation of a law, or a rule or regulation promulgated pursuant to law" under N.J.S.A. § 34:19-3(c)(1); or (ii) "incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment" under N.J.S.A. § 34:19-3(c)(3). Based on either provision, Appellant's CEPA claim fails.

### i.    The RPCs cited by Appellant are not directed to L'Oréal USA's business

As recent New Jersey Supreme Court precedent establishes, Appellant cannot predicate a CEPA claim under N.J.S.A. § 34:19-3(c)(1) on the generic RPC provisions referenced in his Amended Complaint, which do not apply to L'Oréal USA. In its 2014 *Hitesman* decision, the New Jersey Supreme Court noted:

> our courts have recognized various sources of authority bearing the required substantial nexus to the Appellant's claim. In each case, the law, regulation, or other authority held to support a CEPA claim, not only expressed a 'clear mandate of public policy,' but also *identified acceptable and unacceptable practices in the defendant employer's business.*

218 N.J. at 34 (emphasis added). The *Hitesman* Court concluded that the American Nursing Association Code of Ethics ("ANA Code") "does not constitute a source of law or other authority bearing a 'substantial nexus' to [the employer's] conduct." *Id.* at 36. Specifically, the Court reasoned that the ANA Code "expresses the nursing profession's commitment to sound patient care," but "includes no general standard for infection control in a nursing home, much less specific direction on how [the defendant] should have treated its patients' illnesses." *Id.* at 36-37 (citations omitted).

Similarly, in *Gibson v. 11 History Lane Operating Co.*, 2014 WL 700124 (N.J. Super. Ct. App. Div. Feb. 25, 2014), the Appellate Division held that a nurse's disagreement with a long-term care facility's chart-checking policy, which

called for her to transcribe another nurse's written physician's order, did not support an objectively reasonable belief that a law, rule, or regulation was violated where the nurse claimed that the ANA Code and New Jersey Administrative Code were implicated. *Id.* at *9-10. The Court explained that "because the ANA Code does not apply to the facility nor does it establish a standard regarding patient care that [defendant] was required to provide its patients, the ANA Code does not adequately define 'improper quality of patient care' to bolster a CEPA claim." *Id.* at *10.

In this case, just as in *Hiteman* and *Gibson*, the RPC provisions Appellant cited are not directed to L'Oréal USA in its business. Rather, they are directed to Appellant in his practice as an attorney. They include no standards governing the filing of patents and no specific direction about how Appellant should have prepared any particular patent applications. They only require generally that a practitioner not file frivolous patent applications or knowingly make false or misleading statements of fact or law to a tribunal. 37 CFR §§ 11.301, 11.303. *See also* Pa. RPC 4.1. Indeed, Appellant alleges in his Amended Complaint that "whether the subject matter in an invention disclosure is potentially patentable" depends on Appellant's "good faith determination." (JA032, para. 43). Because the RPCs upon which Appellant relied do not specifically identify acceptable and unacceptable practices in L'Oréal USA's business, they are insufficient under

*Hitesman* to support a claim that L'Oréal USA's conduct in setting alleged patent quotas violated a law, rule, or regulation.

Appellant references *Morris v. Greitzer & Locks of New Jersey, LLC*, but this case is not analogous and predates *Hitesman* and *Gibson*. 2009 WL 2525452, at *11 (N.J. Super. Ct. App. Div. Aug. 20, 2009) (noting that "[b]ecause plaintiff alleges a violation of a specific law or rule, her claims fall under N.J.S.A. § 34:19-3a or c(1)"). While the *Morris* court allowed a plaintiff-attorney's CEPA claims to go forward based on an RPC, the defendants in *Morris* were lawyers and a law firm subject to RPCs, unlike Appellee L'Oréal USA here. Additionally, the RPC at issue in *Morris*, RPC 1.8(g), prohibits a lawyer who represents two or more clients from "participat[ing] in making an aggregate settlement of the claims of or against the clients . . . unless each client gives informed consent after a consultation that shall include disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.'" *Id.* at *9. That RPC provides a discrete standard for lawyers to abide by, in contrast to the numerous RPCs referenced by Appellant. As such, the RPCs Appellant recited are too vague to ground his CEPA claim based on L'Oréal's patent goals.

### ii.    The RPCs cited by Appellant do not amount to a clear mandate of public policy

The RPCs Appellant relies upon also do not represent a "clear mandate of public policy concerning the public health, safety or welfare or protection of the

environment." N.J.S.A. § 34:19-3(c)(3). In *Tartaglia*, the New Jersey Supreme

Court allowed a *Pierce* claim to go forward based on New Jersey RPC 1.7(b),

related to conflicts of interest, because it is rooted in the basic duties of a lawyer.

197 N.J. at 110. However, the Court declined to consider as a general matter

whether RPCs constitute a clear mandate of public policy. *Id.* Other courts have

held that professional codes of ethics do not automatically rise to the level of a

clear mandate of public policy. For example, in *Pierce*, a doctor refused to

continue a medical project because she considered it controversial and believed it

presented an unnecessary risk, in violation of the Hippocratic Oath. The New

Jersey Supreme Court held that she did not have a viable claim against the

employer based on contravention of a clear mandate of public policy:

> In certain instances, a professional code of ethics may
> contain an expression of public policy. However, not all
> such sources express a clear mandate of public policy.
> For example, a code of ethics designed to serve only the
> interests of a profession or an administrative regulation
> concerned with technical matters probably would not be
> sufficient.

*Pierce*, 84 N.J at 72. *Accord Colon v. Prudential Insurance Co. of America*, 2006

WL 507732 (N.J. Super. Ct. App. Div. Mar. 3, 2006) ("[A] professional code of

ethics does not contain an expression of public policy if it only serves the interest

of a profession").

Similarly, in *Warthen v. Toms River Community Memorial Hospital*, a nurse refused to follow orders to provide medical treatment to a terminally ill patient and relied on a provision in the Code for Nurses on the "'respect for human dignity and the uniqueness of the client unrestricted by considerations of social or economic status personal attributes, or the nature of health problems.'" 199 N.J. Super. 18, 26 (App. Div. 1985). The *Warthen* court rejected her *Pierce* claim, concluding:

> [T]he passage cited by Appellant defines a standard of conduct beneficial only to the individual nurse and not to the public at large. The overall purpose of the language cited by Appellant is to preserve human dignity; however, it should not be at the expense of the patient's life or contrary to the family's wishes.

*Id.* at 27.

Here, the RPCs cited by Appellant outline a standard of conduct beneficial only to patent attorneys and Pennsylvania attorneys—not to the public at large. Unlike *Tartaglia*, where the RPC at issue was designed to protect the public by specifying the procedures that need to be followed when an attorney seeks a waiver of a concurrent conflict of interest, the USPTO and Pennsylvania Rules are designed mainly to further the efficient prosecution of patent applications by ensuring non-frivolous patent applications and truthful statements in patent proceedings. It cannot be said that these RPCs represent a "clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." *Cf.* N.J.S.A. § 34:19-3(c)(3). For this additional reason, Appellant's

CEPA claim fails as a matter of law.

Although Appellant makes much of the general significance of patent law and attorney-ethics rules, this does not mean they amount to a clear public policy within the meaning of CEPA. As the New Jersey Supreme Court observed, "[n]eedless to say, all laws and regulations are imbued with the public interest." *Estate of Roach v. TRW, Inc.*, 164 N.J. 598, 610 (2000). In his brief, Appellant now runs through a litany of RPC provisions that he never specifically alleged in his Amended Complaint.[6] Appellant's attempt to invoke over a dozen RPCs further demonstrates that the public-policy net he is casting is too broad to be actionable. The CEPA statute requires "a clear mandate of public policy," but it is difficult, if not impossible, to glean a "clear mandate" from Appellant's hodgepodge of general ethics rules, let alone one with a "substantial nexus" to his allegedly protected activity, complaining about company goals. *Dzwonar*, 177 N.J. at 464. Essentially, Appellant is arguing that because he is an attorney and thus subject to RPCs, he has

---

[6] Appellant referred to the entirety of the USPTO and Pennsylvania Rules in his Amended Complaint, but he singled out only two of them in his pleadings, not the following, on which he now attempts to rely: 37 C.F.R. § 1.56(a) (on the duty of candor and good faith); 37 C.F.R. § 11.18(1) (on certifications of statements in patent applications); 37 C.F.R § 11.20 (on attorney discipline); 37 C.F.R. § 11.113 (on proceeding in the best interest of an organization); 37 C.F.R. § 11.201 (on exercising independent professional judgment); 37 C.F.R. § 11.804 (on professional misconduct); Pa. RPC 1.13 (on proceeding in the best interest of an organization); Pa. RPC 3.1 (on not bringing or defending frivolous proceedings); Pa. RPC 3.3 (on the duty of candor and good faith); Pa. RPC 8.4 (on attorney misconduct); and Pa. R.D.E. 204 (on attorney discipline).

a viable CEPA claim. This is not the law.

The cases Appellant cites are inapposite. In *Parker v. M&T Chemicals, Inc.*, the court held that CEPA "does not . . . require an implied exception for in-house attorneys to survive a constitutional challenge." 236 N.J. Super. 451, 460 (App. Div. 1989). The Appellate Division did not opine on the particular merits of the plaintiff-attorney's CEPA claim; rather, it merely found that he could maintain a CEPA claim for monetary damages even though he is an attorney. Similarly, the court in *Lippman v. Ethicon, Inc.* concluded that CEPA does not exclude "watchdog employees . . . as a result of their position or because they are performing their regular job duties." 222 N.J. 362, 365, 387 (2015) (further holding that watchdog employees, i.e., those "whose job duties entail knowing or securing compliance with a relevant standard of care," do not have to establish any additional requirements to maintain a CEPA claim). *Lippman* did not address the merits of the plaintiff-doctor's allegations that he was unlawfully fired for "object[ing] to the proposed or continued sale and distribution of certain [of defendant's] medical products . . . based on his opinion that the products were medically unsafe and that their sale violated various federal and state laws and regulations." *Id.* at 368.

Neither *Parker* nor *Lippman* advance Appellant's position. The District Court did not dismiss his action, and L'Oréal USA has not argued and does not

contend that Appellant was exempt from CEPA's protections because he was an in-house attorney or watchdog, or because his CEPA action may involve attorney-client privileged communications, principles for which *Parker* and *Lippman* stand. Rather, the District Court rightly determined that Appellant's allegations and the particular RPCs on which he relied do not amount to a CEPA claim as a matter of law. Moreover, *Lippman* is distinguishable, as the plaintiff-doctor there took issue with specific medical products that allegedly violated certain safety regulations—not with a general company policy that allegedly created the potential for a conflict with the entire body of patent law and general RPCs, as Appellant maintains.[7]

Lastly, in *Estate of Roach v. TRW, Inc.*, the jury actually found that the allegedly protected activity was *not* "incompatible with a clear mandate of public policy" under N.J.S.A. § 34:19-3(c)(3), and the court upheld this finding in favor of the employer. 164 N.J. The court, however, reinstated the jury's verdict against the employer under N.J.S.A. § 34:19-3(c)(1) and (c)(2), because the plaintiff still could

---

[7] For similar reasons, *Burkhart v. Semitool, Inc.* is not on point. 5 P.3d 1031 (Mont. 2000) (addressing whether attorneys may bring whistleblower claims as a constitutional and practical matter). This case is factually distinguishable as well, as unlike Appellant, the plaintiff-attorney there actually alleged that his supervisor "ordered him to prepare and file what Burkhart believed to be fraudulent patent applications . . . [and] that, following his refusal to do so, [his supervisor] fired him . . . ." *Id.* at 1033. Appellant made no such allegations in his pleadings.

*Weiss v. Carpenter, Bennett & Morrisey*, which Appellant cites as well, did not involve a CEPA or a *Pierce* claim, but rather, judicial review of arbitration awards. 143 N.J. 420, 441-42 (1996).

have reasonably believed that he was disclosing a "violation of a law" under (c)(1), or "fraudulent or criminal" activity under (c)(2). *Id.* at 613-14. In *Estate of Roach*, the plaintiff allegedly disclosed false expense reports, false time cards, and a failure to disclose conflicts of interest, including kickback payments, which were expressly prohibited in the company's code of conduct. *Id.* at 603-04. Even if *Estate of Roach* did address codes of conduct as sources of public policy under CEPA Section 3(c)(3), it is factually dissimilar. In addition to the fact that the *Roach* plaintiff was not an attorney, the code of conduct at issue there barred the conduct disclosed, whereas the RPCs Appellant recites offer no substantive prohibitions. Furthermore, the *Roach* plaintiff disclosed alleged conduct whereas Appellant complained about alleged goals, not actualities.  Appellant fails to establish a "clear mandate of public policy concerning the public health, safety or welfare or protection of the environment" based on over a dozen RPCs, and accordingly, his CEPA claim is unavailing as a matter of law.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny this appeal and affirm the District Court's October 30, 2015 Order as to L'Oréal USA, Inc.

Respectfully submitted,

s/ Christopher R. Carton
Christopher R. Carton

Dated: July 26, 2016

# <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I hereby certify that I am a member of the Bar of the United States Court of

Appeals for the Third Circuit.

Respectfully submitted,

s/ Christopher R. Carton
Christopher R. Carton

Dated: July 26, 2016

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that, in compliance with F.R.A.P. 32(a)(7)(B) and L.A.R. 31.1(c), L'Oréal USA's attached brief contains 8,135 words (as calculated using the word-counting feature of Microsoft Word) in 14 pt. proportional font, exclusive of corporate disclosure statement, tables, and certifications; the text of the electronic brief is identical to the text of the paper copies; and a virus detection program using Symantec has been run on the file and no viruses were detected.

Respectfully submitted,

s/ Christopher R. Carton
Christopher R. Carton

Dated: July 26, 2016

## CERTIFICATE OF SERVICE

CHRISTOPHER R. CARTON certifies as follows:

(1)    On July 26, 2016, I caused L'Oréal USA, Inc.'s Redacted Brief to be electronically filed and served upon all counsel of record via the ECF filing system.

(2)    On July 26, 2016, I caused ten hard copies of L'Oréal USA, Inc.'s Redacted Brief to be sent via Federal Express to:

> Clerk
> United States Court of Appeals
> for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market Street
> Philadelphia, PA 19106-1790

(3)    On July 26, 2016, I caused two hard copies of L'Oréal USA, Inc.'s Redacted Brief to be served via Federal Express upon:

> Harold I. Goodman, Esq.
> Daniel Bencivenga, Esq.
> 1845 Walnut Street, 20th Floor
> Philadelphia, Pennsylvania 19103
> *Attorneys for Appellant*
>
> and
>
> Eric A. Savage, Esq.
> Littler Mendelson, P.C.
> One Newark Center, 8th Floor
> Newark, New Jersey 07102

I certify under penalty of perjury that the foregoing statements are true and

correct to the best of my knowledge.

Respectfully submitted,

s/ Christopher R. Carton
Christopher R. Carton

Dated: July 26, 2016