# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## No.  15-3810

---

STEVEN J. TRZASKA,

Appellant,

v.

L'ORÉAL USA, INC. and L'ORÉAL, S.A.,

Appellees.

---

## REPLY BRIEF FOR APPELLANT

---

RAYNES McCARTY
By:   Harold Goodman, Esquire
      Daniel Bencivenga, Esquire
      1845 Walnut Street
      20th Floor
      Philadelphia, Pennsylvania  19103
      215-568-6190
      *Attorneys for Plaintiff-Appellant Steven J. Trzaska*

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................... 1

I.    Plaintiff's Amended Complaint States a Viable CEPA Claim.................. 1

II.   CEPA Plaintiffs Do Not Need to Prove an "Actual Violation"
      of Law or Public Policy to Sustain Their Claims ...................................... 4

III.  Lawyer Whistleblowers Should Not Be Held to a Different
      Standard Than Other CEPA Whistleblowers ........................................... 8

IV.   By Regularly Engaging in the Patent Business, the L'Oréal
      Defendants Must Comply with Applicable Rules of
      Professional Responsibility........................................................................ 11

V.    There is No Basis on Which to Dismiss the Appeal
      as to L'Oréal, S.A. ..................................................................................... 13

Conclusion................................................................................................... 15

Certificate of Bar Membership

Certificate of Compliance

Certificate of Service

i

# TABLE OF CITATIONS

## CASES

Page(s)

*Abbamont v. Piscataway Twp. Bd. of Educ.*,
  650 A.2d 958 (N.J. 1994) ................................................................ 8

*Apple, Inc. v. Samsung Electronics, Inc.*,
  786 F.3d 983 (Fed. Cir. 2015),
  *cert. granted*, 136 S. Ct. 1453 (2016) ......................................... 12

*Blackburn v. United Parcel Service, Inc.*,
  3 F. Supp. 2d 504 (D.N.J. 1998), *aff'd.*,
  179 F.3d 81 (3d Cir. 1999) ........................................................... 4-5

*Dzwonar v. McDevitt*,
  828 A.2d 893 (N.J. 2003) .............................................................. 6

*Estate of Roach v. TRW, Inc.*,
  754 A.2d 544 (N.J. 2000) .............................................................. 5

*Gerard v. Camden County Health Services Center*,
  782 A.2d 494 (N.J. Super. App. Div. 2002) .................................. 5

*Gonzalez v. City of Camden*,
  2012 WL 6097076 (N.J. Super. App. Div. Dec. 10, 2012) .......... 10

*Hitesman v. Bridgeway, Inc.*,
  93 A.3d 306 (N.J. 2014) ............................................................... 6

*Kachmar v. Sungard Data Systems, Inc.*,
  109 F.3d 173 (3d Cir. 1997) ......................................................... 3

*Leshinsky v. Telvent GIT, S.A.*,
  942 F. Supp. 2d 432 (S.D.N.Y. 2013) ......................................... 7

*Lindenberg v. Arrayit Corp.*,
  2016 WL 659724 (D.N.J. Feb. 18, 2016), *reconsideration denied*,
  2016 WL 1378709 (D.N.J. April 7, 2016) ................................... 6, 7

**Page(s)**

*Lippman v. Ethicon, Inc.*,
    119 A.3d 215 (N.J. 2015) ............................................................. 9-10

*Mazza v. George Yelland*, Inc.,
    161 F. Supp. 2d 376 (D.N.J. 2001) ............................................... 4, 5, 6

*Parker v. M&T Chemicals, Inc.*,
    566 A.2d 215 (N.J. Super. App. Div. 1989) ................................. 8, 9

*Pierce v. Ortho. Pharm. Corp.*,
    417 A.2d 505 (N.J. 1980) ............................................................. 9-10

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*,
    324 U.S. 806 (1945) ..................................................................... 13

*Stapleton v. DSW, Inc.*,
    931 F. Supp. 2d 635 (D.N.J. 2013)............................................... 6

*Tartaglia v. Paine Webber, Inc.*,
    794 A.2d 816, (N.J. Super. App. Div. 2002)................................ 3-4

*Tartaglia v. UBS Painewebber, Inc.*,
    961 A.2d 1167 (N.J. 2008) .......................................................... 9

*Wiest v. Lynch*,
    710 F.3d 121 (3d Cir. 2013) ........................................................ 7

*Wilson v. GEM Ambulance, L.L.C.*,
    2014 WL 5782688 (N.J. Super. App. Div. Nov. 7, 2014)............ 6

**FEDERAL REGULATIONS RELATING TO LEGAL PRACTICE
BEFORE THE UNITED STATES PATENT AND TRADEMARK OFFICE**

37 C.F.R. § 1.56(e)........................................................................... 12

37 C.F.R. § 11.804 .......................................................................... 12

**Page(s)**

**PENNSYLVANIA RULES OF PROFESSIONAL CONDUCT**

Pa.RPC 3.3 ......................................................................... 12

Pa.R.D.E. 204 ..................................................................... 12

**FEDERAL STATUTES**

Sarbanes-Oxley Act, Section 806, 18 U.S.C. § 1514A........................... 7

**NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT**

N.J.S.A., § 34:19-3c.(2) ......................................................... 5

N.J.S.A., § 34:19-8 ............................................................... 10

**RULES OF CIVIL PROCEDURE**

Fed.R.Civ.P. 12(b)(5) ............................................................ 14

Fed.R.Civ.P. 12(b)(6) ............................................................ 14, 15

# ARGUMENT

## I.    Plaintiff's Amended Complaint States a Viable CEPA Claim

*We have this plan we put in place.  It's an annual quota system we devised for the number of patent applications you must file for us here in the United States and worldwide.  You need to meet these quotas so we can maintain traction with our financial analysts and attract investors to buy our stock and consumers to buy our products.  It doesn't matter if the underlying inventions are not patentable.  The quotas must be met regardless.  If they are not, your jobs and careers will be at risk.*

So pled Steven Trzaska in the First Amended Complaint he filed against the L'Oréal defendants.  As head of patents and business development in the United States, as a licensed Pennsylvania attorney, and as a patent lawyer who regularly filed patent applications for L'Oréal with the U.S. Patent and Trademark Office, he knew that he and L'Oréal (as the patent applicant) would be violating rules of professional responsibility if he and his staff complied with L'Oréal's scheme.  He thus protested and conveyed his concerns to his superiors at both L'Oréal USA and L'Oréal, S.A.  He told them that he and his staff were opposed to filing patent applications for inventions that were not patentable and refused to do so.  His pleas were ignored.  It was not as if the defendants were unaware their quota scheme was illegal.  Yet, despite that knowledge (or because of it), they nonetheless fired Mr.

1

Trzaska just several weeks after he protested the scheme to his superiors. They had no valid reason to do so. It was a decision they undertook for one purpose -- to retaliate against him because of "his refusal to authorize the filing of patent applications for inventions which he did not believe to be patentable, and his refusal to supervise such conduct by patent attorneys and patent agents under his supervision." Am. Cmplt. at ¶ 65, App. at 35-36.

These are the essential facts pled by Mr. Trzaska in his Amended Complaint. Ignoring or revising them as L'Oréal USA has done in its Brief will not make them go away. To the contrary, by recasting the Amended Complaint to suit its own purposes, L'Oréal USA only serves to magnify what that Complaint actually says and the reasonable inferences to be drawn from it. There is thus no basis for L'Oréal USA to suggest -- or for the Court to infer -- that Mr. Trzaska's opposition was merely based on "his disagreement with the hypothetical application of an alleged company policy on yearly patent-filing goals." Brief for L'Oréal USA at 1. These were mandatory "quotas," not "goals," and their impact was real and ongoing, not "hypothetical." Am. Cmplt. at ¶¶ 21-26, 32-37, 45-46, and 52-57, App. at 27-34. Nor is there any basis to suggest that the quotas were "lawful." Brief for L'Oréal USA at 12-13. They were anything but that as the L'Oréal defendants were well aware. Am. Cmplt. at ¶ 73, App. at 37. Likewise, L'Oréal USA has no basis in this record to assert that Mr. Trzaska lacked "an objectively

2

reasonable belief that [its] conduct violated a law, regulation or clear mandate of

public policy." Brief for L'Oréal USA at 13. Not only was L'Oréal itself aware

that its quota scheme was unlawful, as an experienced patent lawyer Mr. Trzaska

was aware that the scheme violated specific rules of professional responsibility that

he owed to the USPTO and the Supreme Court of Pennsylvania. Am. Cmplt. at

¶¶ 16-20, 33-37 and 55-60, App. at 27, 29-31 and 34-35. Clearly then, as he pled,

Mr. Trzaska "reasonably believed" that L'Oréal's quota scheme was both

unlawful and unethical. Am. Cmplt. at ¶¶ 68-70, App. at 36. Finally, there is no

support anywhere in the Amended Complaint for L'Oréal USA's accusation that

Mr. Trzaska "pilfered" and "diverted" three exhibits from the company months

before he was fired, *i.e.*, Exhibits A-C to his Amended Complaint. Brief for

L'Oréal USA at 1, 9 and 11 n.2. Not only is there no basis for those accusations --

which are *de hors* the record and should therefore be disregarded by the Court --

their use at trial or otherwise is more suited for initial disposition by the district

court in the event of a reversal and remand by this Court of its dismissal order.

*See, e.g., Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 181-82 (3d Cir.

1997) (leaving it to the district court on remand to determine the means by which a

lawyer-plaintiff can use confidential information in support of her wrongful

discharge suit); *accord Tartaglia v. Paine Webber, Inc.*, 794 A.2d 816, 820-21

(N.J. Super. App. Div. 2002) (improper for a trial court to suppress the use of even

3

unlawfully obtained confidential documents that may support a New Jersey plaintiff's wrongful discharge suit, other less onerous means being available to allow them to be used in the course of the litigation).

## II. CEPA Plaintiffs Do Not Need to Prove an "Actual Violation" of Law or Public Policy to Sustain Their Claims

Relying on the district court's opinion in *Blackburn v. United Parcel Service, Inc.*, 3 F. Supp. 2d 504 (D.N.J. 1998), *aff'd. on other grounds*, 179 F.3d 81 (3d Cir. 1999), L'Oréal USA contends that to satisfy CEPA's "reasonable belief" standard, a plaintiff must show that "illegal activity was going on or, at the very least, is imminent." Brief for L'Oréal USA at 18 (*quoting* 3 F. Supp. 2nd at 525) (italics in original omitted). Aside from the fact that was precisely what Mr. Trzaska pled in his Amended Complaint, L'Oréal's argument is flat out wrong. First, though affirming the district court's grant of summary judgment in *Blackburn*, this Court questioned "the correctness of [its] ruling on this point," 179 F.3d at 93 and n.4, and, for that reason, affirmed it on different grounds.

Second, New Jersey courts have themselves criticized the district court's opinion in *Blackburn* and concluded it misstates what a CEPA plaintiff must prove to sustain his or her claim. In *Mazza v. George Yelland, Inc.*, 161 F. Supp. 2d 376, 379-80 (D.N.J. 2001), for example, the district court not only disagreed with his colleague's decision in *Blackburn*, but pointed out that a post-*Blackburn*

4

decision of the New Jersey Supreme Court had held that CEPA "does not require

that the activity complained of . . . be an actual violation of a law or regulation,

only that the employee 'reasonably believes' that to be the case." *Id*. at 379,

*citing* and *quoting Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 551 (N.J. 2000).

Nor was *Mazza* alone in rejecting the district court's opinion in *Blackburn*. In

*Gerard v. Camden County Health Services Center*, 782 A.2d 494, 497-98 (N.J.

Super. App. Div. 2002), *certif. denied*, 803 A.2d 636 (N.J. 2002), the Appellate

Division concluded that an "actual violation" of the law -- past or imminent -- is

not required to sustain a CEPA section 3c(2) claim (one of the claims asserted here

by Mr. Trzaska). It was enough, the court held, if the plaintiff reasonably believed

that the complained-of conduct was or might be unlawful. *Id*. at 498: " . . . the

statute affords protection to employees if they reasonably believe that the activity

complained of is 'fraudulent or criminal' [referring to section 3c(2) of CEPA]

even when the activity does not rise to the level of an actual crime") (citations

omitted).

Third, New Jersey courts, including the New Jersey Supreme Court, have

rejected defense efforts to engraft onto CEPA's statutory "reasonable belief"

standard the additional requirement that plaintiffs must also show and prove that

their employers actually violated the law or applicable public policy. As held by

the Supreme Court of New Jersey: " . . . it is not the plaintiff's burden to show that

the defendant actually violated the law, rule, regulation or other authority cited, but only to demonstrate that he or she had a reasonable belief that such a violation occurred." *Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 318 (N.J. 2014); *accord Dzwonar v. McDevitt*, 828 A.2d 893, 901 (N.J. 2003) (same). Consistent with that holding, many courts have green-lighted CEPA claims in which plaintiffs were either mistaken in believing their employers had acted unlawfully or based their belief not on an actual violation of the law but rather a "possible" violation of the law. We cite and describe several of those cases in the margin[1], but return to the point, so frequently reiterated in the caselaw, that all that is required of CEPA plaintiffs -- and what has been clearly alleged here by Mr. Trzaska -- is a

---

[1]  *See Mazza v. George Yelland, Inc.*, 161 F. Supp. 2d 376 (D.N.J. 2001) (plaintiff, a bookkeeper, was mistaken in believing that her employer intended to file a fraudulent tax return, but despite her mistaken belief, the court allowed her CEPA claim to go forward because her belief was "reasonable"); *Lindenberg v. Arrayit Corp.*, 2016 WL 659724 (D.N.J. Feb. 18, 2016), *reconsideration denied*, 2016 WL 1378709 (D.N.J. April 7, 2016) (plaintiff, defendant's executive director, mistakenly believed her employer had filed a false registration statement with the SEC, but her CEPA claim was allowed to proceed because her belief was "reasonable"); *Stapleton v. DSW, Inc.*, 931 F. Supp. 2d 635 (D.N.J. 2013) (plaintiff "suspected" a customer of child abuse and assisted in reporting the customer to a child welfare agency; she was fired for revealing the customer's confidential contact information to the agency, but nonetheless her CEPA suit was allowed to proceed because she acted reasonably); and *Wilson v. GEM Ambulance, L.L.C.*, 2014 WL 5782688 (N.J. Super. App. Div. Nov. 7, 2014) (EMT fired for making allegedly false reports of elder abuse, defense motion for summary judgment of her CEPA claim denied because her belief was reasonable).

6

reasonable belief that their employers had violated the law or were about to do so.

As Judge Chesler said in another CEPA case:

> A holding to the contrary would deny protection to
> employees whose conduct may have prevented the
> violation of a law in the first place, and would negate the
> purpose of the [CEPA] statutory scheme.

*Lindenberg v. Arrayit Corp.*, 2016 WL 659724, at *4 (D.N.J. Feb. 18, 2016).[2]

---

[2]  This Court reached a similar result in *Wiest v. Lynch*, 710 F.3d 121 (3d Cir.
2013).  There, the Court held that the non-retaliation provision of the Sarbanes-
Oxley Act, Section 806, 18 U.S.C. § 1514A, did not require proof by the
plaintiff whistleblower of an "existing" violation of law by the defendant
employer.  Rather, it was sufficient for the plaintiff to show that he or she
"reasonably believed" a violation was likely to occur in the future:

> It would frustrate [the] purpose [of the law] to require an
> employee, who knows that a violation is imminent, to wait for
> the actual violation to occur when an earlier report possibly
> could have prevented it.

*Id.* at 133.  Citing *Wiest*, a federal district court said this about Section 806 of
Sarbanes-Oxley:

> It furthers the purpose of Section 806 to nip corporate
> wrongdoing in the bud, rather than permitting a scheme to
> blossom into a full-fledged crime before whistleblower
> protections take effect. Whistleblowers should not be asked to
> wait until executives have dotted the i's and crossed the t's
> before sounding an alarm.

*Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 446 (S.D.N.Y. 2013).

### III. Lawyer Whistleblowers Should Not Be Held to a Different Standard Than Other CEPA Whistleblowers

L'Oréal USA would create two categories of CEPA whistleblowers: one that only includes lawyers and the other that includes all other employees. As conceived, lawyers would be subject to a higher, more demanding standard requiring them to prove their employers actually committed an unlawful act, whereas all other employees would only have to prove they had a "reasonable belief" that a violation had been committed. There is no statutory authority for this distinction, nor is it consistent with the underlying remedial goals that animated CEPA's passage in 1986. *See, e.g., Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994) ("CEPA must be considered 'remedial' legislation and therefore should be construed liberally to effectuate its important social goal").

It is no wonder, then, that New Jersey's Appellate Division approved a patent lawyer's CEPA claim based on his refusal to participate in his employer's trade secrets theft scheme. Rejecting the argument that lawyers should not be covered by CEPA, the court held: "We . . . will not read in-house attorneys out of the Act's protection," *Parker v. M & T Chemicals, Inc.*, 566 A.2d 215, 221 (N.J. Super. App. Div. 1989). *Id.* at 220 (" . . . our holding should discourage employers from inducing employee-attorneys to participate in or condone illegal

8

schemes and should encourage a lawyer's resolve to resist such inducements because they may now enjoy some specific statutory protections").

*Parker*'s force was underscored last year by the New Jersey Supreme Court's decision in *Lippman v. Ethicon, Inc.*, 119 A.3d 215 (N.J. 2015). There, the Court rejected defense efforts to create two disparate groups of CEPA employees -- one, "watchdog employees" who were beyond the Act's coverage, and all other employees who were protected by it. As the Court ruled: "By its own terms, the statutory cause of action created by CEPA applies equally to all employees." *Id*. at 217 (emphasis added). Were there any doubt about its usage of the term "equally," the Court went on to say in the next two sentences of its opinion: "There is no evidence of legislative intent to have the act operate any other way. Accordingly, we hold that there can be no additional burden imposed on watchdog employees seeking CEPA protection, unless and until the Legislature expresses its intent to differentiate among classes of employees who are entitled to CEPA protection." *Id*. (emphasis added).

These holdings leave L'Oréal USA with only a finger-tip grasp on the ledge. But without a net its only support is a decision that has no bearing on this one. That case, *Tartaglia v. UBS PaineWebber, Inc.*, 961 A.2d 1167 (N.J. 2008), is unhelpful because it was not based on CEPA, but rather on a common law *Pierce* claim. *See Pierce v. Ortho. Pharm. Corp.*, 417 A.2d 505 (N.J. 1980). And while

the two share many of the same goals, *e.g.*, promoting whistleblowing and

proscribing retaliation against whistleblowers, one (CEPA) is a statutory cause of

action while the other (*Pierce*) is a common law one.  Moreover, because of

CEPA's waiver provision, N.J.S.A. 34:19-8, a plaintiff must elect to pursue one to

the exclusion of the other.  Here, Mr. Trzaska has chosen to pursue a CEPA claim.

As such, this Court must evaluate it based on traditional principles of statutory

construction.  Among those, as the New Jersey Supreme Court made clear in

*Lippman*, "courts should not rewrite plainly worded statutes.  It is not our job to

engraft requirements to a CEPA cause of action . . . that the Legislature did not

include."  119 A.3d at 230.  There being nothing in CEPA that carves out two

classes of employees -- lawyers and all other employees -- L'Oréal's argument to

the contrary is devoid of merit and should be rejected.[3]

---

[3]  L'Oréal USA also cites a one page non-precedential opinion by New Jersey's
Appellate Division to support its disparate treatment argument.  That opinion,
however, *Gonzalez v. City of Camden*, 2012 WL 6097076 (N.J. Super. App.
Div. Dec. 10, 2012), is of no help to it either.  Plaintiff Gonzalez, a former
lawyer employed by Camden's legal department, claimed he was fired because
he blew the whistle on the department's alleged ethics violations.  In fact, a
Supreme Court of New Jersey ethics opinion conclusively demonstrated no
such violation existed.  Not surprisingly, the Appellate Division ruled that Mr.
Gonzalez had no reasonable basis for his CEPA claim.  Mr. Trzaska's Amended
Complaint, by contrast, stands on entirely different footing.  *See*  Argument I,
*supra*.

**IV.    By Regularly Engaging in the Patent Business, the L'Oréal Defendants
Must Comply with Applicable Rules of Professional Responsibility**

"Put simply, L'Oréal, a beauty company, is not governed by any ethics rules
governing the legal profession."   Brief for L'Oréal USA at 2.   With that assertion,
CEPA's reach would be cabined and restricted just to those employers whose
business is law or law-related.   But any such revision of CEPA, if it were to come
at all, would need the stamp of legislative and gubernatorial approval which to
date, some forty years after Act's passage, has never been suggested, much less
enacted.

It may be true of course that L'Oréal's principal business is the
development, manufacture and sale of its beauty products.   But that hardly tells the
whole story.   As pled by Mr. Trzaska in his Amended Complaint, L'Oréal
(referring here to both defendants) is heavily involved in the patent business.
Yearly, it sets and seeks to enforce quotas for the filing of its patents in this
country and worldwide.   Am. Cmplt. at ¶¶ 21-25, 38-42, 45-46, App. At 27-28,
31-32.   Yearly it files hundreds of patent applications seeking government
approval of its "inventions." Am. Cmplt. at ¶¶ 21-25, App. at 27-28.   Indeed, on
its website, L'Oréal USA boasts that "[it] is the world leader among companies
registering patents in the cosmetics field." [4]   Nor is that all.   The packaging on

---

[4]    http://www.lorealusa.com/group/discover-l'or%C3%A9al-
usa/l%E2%80%99or%C3%A9al-usa-research-and-innovation

L'Oréal's products frequently refers to its patents as a means of incentivizing consumers to purchase them. Am. Cmplt. at ¶¶ 28-29, App. at 28. L'Oréal also regularly files actions in United States federal courts to enforce its patents through infringement and other types of claims. Am. Cmplt. at ¶ 8(e), App. at 25.

Additionally, recall that L'Oréal employed Mr. Trzaska as its Head of Patents and that his job entailed the filing of patents for it with the USPTO. In discharging his duties and responsibilities, Mr. Trzaska was legally and ethically required to comply with the rules of professional conduct that governed his practice of law, Am. Cmplt. at ¶¶ 16-20, App. at 27, not the least of which was the duty of candor he owed the USPTO and the Supreme Court of Pennsylvania. *See* 37 C.F.R. § 1.56(e) and Pa.R.P.C. 3.3; *see also* pp. 23-27 of Appellant's opening Brief for additional rules to which he was required to comply. Any breach of those rules subjected Mr. Trzaska to sanctions, including fines, suspension and disbarment. *See*, *e.g.*, 37 C.F.R. § 11.804 and Pa.R.D.E. 204.

L'Oréal thus cannot claim with a straight face that it is not engaged in the patent business. It can no more make that argument than can, say, Apple, a technology company currently involved in a highly visible, hundred-plus million dollar patent infringement suit against Samsung pending now in the United States Supreme Court. *Apple, Inc. v. Samsung Electronics, Inc.*, 786 F.3d 983 (Fed. Cir. 2015), *cert. granted*, 136 S. Ct. 1453 (2016).

12

Simply stated, L'Oréal is wrong.  Its business is as much patent-related as it is beauty-related.  So too, L'Oréal is wrong in suggesting that the rules of professional responsibility only exist as a benefit for lawyers, or, more specifically, for the patent bar.  That misanthropic notion was discredited many years ago by the Supreme Court:

> The possession and assertion of patent rights are issues of great moment to the public.  . . . . <u>A patent, by its very nature, is affected with a public interest</u> . . . . The far-reaching social and economic consequences of a patent therefore give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct, and that such monopolies are kept within their legitimate scope.

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 815-16 (1945) (citations and internal quotation marks omitted) (emphasis added). There being nothing to commend L'Oréal's argument, it cannot be gainsaid that the rules of professional responsibility, imbued with the public interest, provide a source of public policy authorizing Mr. Trzaska's CEPA claim.


## V.        There is No Basis on Which to Dismiss the Appeal as to L'Oréal, S.A.

Rehashing what it previously said in its pending motion to dismiss, which has already been fully briefed, L'Oréal, S.A., the French parent company of L'Oréal USA, again asks the Court to dismiss Mr. Trzaska's appeal as to it for lack

of jurisdiction.  But there is nothing new in its Brief.  Moreover, as we pointed out in our response in opposition to the motion, the district court dismissed <u>both</u> L'Oréal defendants on the <u>very</u> <u>same</u> ground, *i.e.*, Mr. Trzaska's purported failure to state a valid CEPA claim against them.  Indeed, that was the reason why the district court denied L'Oréal, S.A.'s Rule 12(b)(5) motion as "moot." Therefore, since the district court's dismissal order applies equally and for the same reasons to both defendants, this Court has jurisdiction over L'Oréal, S.A. as well as L'Oréal, USA.

No more valid is L'Oréal, S.A.'s contention that Mr. Trzaska waived his right to appeal the district court's dismissal order as to it by not reiterating his arguments in his opening Brief.  That is non- sensical.  How many times does Mr. Trzaska need to repeat himself?   He fully briefed the issue in his opposition to L'Oréal, S.A.'s motion to dismiss;  a motion court Judge referred the motion and Mr. Trzaska's response to the merits panel;  and Mr. Trzaska referenced the pendency of the motion at the outset of his opening merits Brief.  *Id*. at 1-2.  We think there is nothing more to be said on the issue except to rest on our prior submissions.

Lastly, L'Oréal, S.A. makes the alternative argument that if the Court does have jurisdiction over it, and if Mr. Trzaska has not waived his claims against it, the district court's Rule 12(b)(6) order should nonetheless be affirmed for the same

14

reasons it relied on to dismiss L'Oréal USA from the case.  As that goes to the merits of the appeal, which Mr. Trzaska has fully addressed both in his opening Brief and this Reply, we can say no more except, by incorporation, to reiterate that Mr. Trzaska's Amended Complaint does set out a valid CEPA claim against both L'Oréal defendants.

## **CONCLUSION**

For the reasons stated here and in Mr. Trzaska's opening Brief, the district court's order dismissing both L'Oréal defendants from the case on Rule 12(b)(6) grounds should be reversed.

RAYNES McCARTY

By: _Darel I. Goodman_____

Harold I. Goodman, Esquire
Daniel Bencivenga, Esquire
1845 Walnut Street
20th Floor
Philadelphia, PA 19103
215 - 568 - 6190

Attorneys for Plaintiff-Appellant Steven J. Trzaska

Dated:   August 24, 2016

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I hereby certify that I am a member of the Bar of the United States Court of

Appeals for the Third Circuit.


_____

Harold I. Goodman, Esquire

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that, in compliance with F.R.A.P. 32(a)(7)(B) and L.A.R. 3

1.l(c), Appellant Trzaska's attached brief contains 3,721 words (as calculated using

the word-counting feature of Microsoft Word) in 14 pt. proportional font, exclusive

of corporate disclosure statement, tables, and certifications; the text of the

electronic brief is identical to the text of the paper copies; and a virus detection

program using Symantec has been run on the file and no viruses were detected.


_____

Harold I. Goodman, Esquire

## CERTIFICATE OF SERVICE

I, Harold I. Goodman, hereby certify that on August 24, 2016 I caused the foregoing Reply Brief for Appellant to be filed via ECF and served via the Court's electronic notification system upon all filing users associated with this case. I additionally caused one copy of the Reply Brief to be served upon the following counsel by U.S. First Class Mail:

Christopher R. Carton, Esquire
George Peter Barbatsuly, Esquire
Laura Scully, Esquire
K&L GATES LLP
One Newark Center
10th Floor
Newark, NJ 07102

*Attorneys for Appellee L'Oréal USA, Inc.*

Eric A. Savage, Esquire
Littler Mendelson, P.C.
One Newark Center
8th Floor
Newark, New Jersey 07102

*Attorney for Appellee L'Oréal, S.A.*

Harold I. Goodman, Esquire